Charles P. LAHR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 38A02–9305–CR–230.

Court of Appeals of Indiana,
Second District.

Oct. 5, 1994.

Transfer Denied Dec. 14, 1994.

Chris M. Teagle, Muncie, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Charles P. Lahr appeals his conviction by jury of Conspiracy to commit murder,[1] a Class A felony. We affirm.

## ISSUES

We restate the issues for our review as:

1. Whether there was sufficient probative evidence to overcome Lahr's entrapment defense.

2. Whether the trial court erred by admitting into evidence a letter written by Lahr and an audio tape of his conversation with an informant.

3. Whether the trial court erred in limiting cross-examination of a witness about his prior juvenile conviction.

4. Whether the trial court erred in denying Lahr's request for a new trial based upon newly discovered evidence.

5. Whether the trial court erred in refusing Lahr's tendered instructions on assisting a criminal as a lesser included offense of conspiracy to commit murder.

## FACTS [2]

■ The facts most favorable to the jury's verdict show that in June, 1991, Lahr was arrested for selling marijuana and illegal drugs. David Denney had been a frequent visitor to the game arcade and martial arts studio in Portland, Indiana owned by Lahr and had visited Lahr while he was in jail on the drug charges. Shortly after Lahr was released from jail, he and Roy Hills met with Denney. Lahr asked Denney to kill Richard Price, the main witness against Lahr on his drug charges and promised to provide Denney with an arcade of his own if he killed Price. At a later meeting with Lahr and Hills, Lahr gave Denney a shotgun to use in killing Price.

■ Denney informed the Portland, Indiana police of Lahr's plan. For his subsequent meetings with Lahr, Denney was equipped with a microphone connected to a radio transmitter so that the police could hear and record Denney's conversations with Lahr. At his next meeting with Lahr and Hills, Denney asked for a new gun, saying that the shotgun Lahr had provided was inoperable; Lahr replied that Denney could use a knife to kill Price. Denney declined this suggestion, and Lahr then gave Denney a .32 caliber revolver and ammunition.[3] La-

---

**1.** IC 35–41–5–2 (1988 Ed.).

**2.** Ind.Appellate Rule 7.2(A)(3) provides, in part, that: "Notations shall be made on the margin of each page of the transcript of the evidence indicating all motions and the rulings thereon; the exhibits, if any; the instructions given and refused; all rulings of the court; and where the evidence is set out by deposition or otherwise, the name of each witness and whether the examination is direct, cross, or redirect." These notations are made to aid counsel for appellee and this court by providing ready access to the relevant parts of the record. *See Kentucky–Indiana Mun. Power Ass'n v. Public Serv. Co. of Ind.* (1979), 181 Ind.App. 639, 650, 393 N.E.2d 776,

784. At a minimum, each page of the transcript should have a marginal note identifying the witness and the stage of that witness's testimony (e.g., direct or cross-examination, etc.).

Here fewer than one-third of the pages of the transcript in this case have the required marginal notations. Appellant's counsel is advised to heed the language of App.R. 7.2(A)(3) and the repeated warnings we have included in our opinions over the years, in future appeals.

**3.** In this appeal, Lahr contends that the shotgun and the handgun were given to Denney by Hills. Denney and Hills testified that Lahr, not Hills, gave both guns to Denney. On review, where the evidence is in conflict, we are bound to consider

ter that day, Denney told Lahr and Hills to obtain alibis because he was going to shoot Price. Denney awoke Lahr about 2:30 the next morning and falsely reported that Price was dead. After asking for money, Denney left, saying he was going to Florida. Shortly thereafter, the police arrested Lahr and Hills. Additional facts are supplied as necessary.

## DISCUSSION AND DECISION

### ISSUE ONE: ENTRAPMENT DEFENSE

 Lahr first argues that the State failed at trial to negate his defense of entrapment. Entrapment exists where an otherwise law-abiding citizen is induced through police involvement to commit the charged crime. *Strong v. State* (1992), Ind.App., 591 N.E.2d 1048, 1050, *trans. denied*. The defense is raised by showing police involvement in the criminal activity; no formal pleading of the defense is necessary. *Id.* at 1051. In reviewing the sufficiency of evidence negating an entrapment defense, we apply the same standard we use in all other challenges to sufficiency of the evidence. *Morris v. State* (1992), Ind.App., 604 N.E.2d 665, 669.

 Determination of an accused's guilt or innocence in a criminal case is a matter for the trier of fact; here, a jury. *See Davis v. State* (1994), Ind.App., 635 N.E.2d 1117, 1120. We may not reweigh the evidence or judge the credibility of witnesses when we review the sufficiency of evidence. *Id.* Where the evidence is in conflict, we consider only that evidence which is most favorable to the jury's verdict. *Webb v. State* (1991), Ind.App., 575 N.E.2d 1066, 1071, *trans. denied*. We must affirm if substantial evidence of probative value supports the conviction. *Adams v. State* (1989), Ind.App., 542 N.E.2d 1362, 1366.

 The defense of entrapment may be rebutted by showing the defendant had a predisposition to commit the crime. *Grant v. State* (1993), Ind.App., 623 N.E.2d 1090, 1098, *trans. denied*. Here, there was sufficient evidence from which the jury could find

that Lahr was predisposed to commit the crime. Denney testified that Lahr first suggested the plan to kill Price, the key witness against Lahr in his drug case. At meetings with Denney and Hills, Lahr asked Denney to kill Price, discussed payment for the murder, and provided a shotgun, all before Denney went to the police. By enlisting Denney's aid, the police merely provided Lahr with the opportunity to commit an overt act furthering an existing conspiracy. *See Wilhelm v. State* (1983), Ind., 455 N.E.2d 595, 597 (providing defendant an opportunity to deliver weapon to informant in furtherance of conspiracy to murder witness not entrapment).

### ISSUE TWO: ADMISSION OF EVIDENCE

 A trial court has broad discretion in ruling upon the admissibility of evidence. We will not disturb its decision absent a showing that the trial court abused that discretion. *Harless v. State* (1991), Ind.App., 577 N.E.2d 245, 247.

#### A. The Letter Written by Lahr

While in jail on the charge in this case, Lahr wrote a note and gave it to a trustee to pass on to Hills. Instead, the trustee delivered the note to the jailer. At trial, the trustee identified the note as the one given to him by Lahr to be passed on to Hills.

 Lahr now contends that at trial the State failed to prove a chain of custody for the note and that it was susceptible to tampering. For this reason, Lahr argues that it was error for the trial court to admit the note into evidence. At trial, however, Lahr objected that the note contained privileged information. In making his objection, Lahr admitted that foundation and chain of custody were proved: "[O]bviously they have shown a chain of custody and a foundation through Mr. Hills that he identified this to be Charles Lahr's handwriting." *Record* at 650. A defendant may not object for one reason at trial and then rely upon another on appeal.

only that evidence which is most favorable to the jury's verdict. *Webb v. State* (1991), Ind.App., 575 N.E.2d 1066, 1071, *trans. denied*. The evi-

dence most favorable to the jury's verdict is that Lahr gave both guns to Denney.

*Ingram v. State* (1989), Ind., 547 N.E.2d 823, 829. Failure to make the objection in the trial court waives it upon appeal. *Id.* Because Lahr did not object to the adequacy of foundation and chain of custody for the note at trial, any error in its admission is waived.

Even absent waiver, a new trial is not warranted. The admissibility of documents as exhibits is a matter within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. *Cobb v. State* (1992), Ind.App., 585 N.E.2d 40, 43. To establish a proper foundation for the admission of a document, its authenticity must be proved. *See Kern v. State* (1981), Ind., 426 N.E.2d 385, 387. Absolute proof of authenticity is not required. Evidence demonstrating a reasonable probability that the exhibit is what it is claimed to be and that its condition is substantially unchanged as to any material feature is sufficient. Miller, *Indiana Evidence* § 901.101 at 266–67 (1984).

Here, proof of chain of custody was not needed to prove the authenticity of the note. The trustee identified the note which was offered into evidence as the one he received from Lahr. Hills also testified that he recognized Lahr's handwriting and that the note had been written by Lahr. The note was not fungible, and it was adequately identified; therefore, its admission was not error.

## B. Audio Tape

Four audio tape recordings of Denney's conversations with Lahr were offered into evidence. The trial court sustained Lahr's objections to three of the recordings and admitted only the tape of Denney's last meeting, when he reported Price's death to Lahr. Lahr argues that the tape which was admitted was not sufficiently clear as to be intelligible and enlightening to the jury and that the jury would speculate as to the tape's contents, to Lahr's prejudice.

The trial court has wide discretion in the admission of audio tapes. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, 712, *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617 (1990). A recording made in a non-custodial setting[4] should be admitted into evidence only if it is of such clarity as to be intelligible and enlightening to the jury. *McCollum v. State* (1991), Ind., 582 N.E.2d 804, 811–12. Every word on the tape need not be intelligible for the tape to be admissible. *Hestand v. State* (1982), Ind., 440 N.E.2d 1121, 1122. We must instead review the tape as a whole to determine whether it would lead the jury to speculate as to its contents. *Id.*

Prejudice to a defendant may result from the admission of a partly unintelligible audio tape when it is used to bolster the credibility of a vulnerable witness, such as a police informant with a criminal record. The intelligible portions of the tape may corroborate part of the informant's story, but the jury is forced to speculate as to the unintelligible portions of the tape and may assume that the tape confirms the informant's entire story. *See Roller v. State* (1992), Ind.App., 602 N.E.2d 165, 171, *trans. denied.*

4. By non-custodial setting, we mean circumstances other than the questioning of a witness or a criminal suspect while detained and with the advantages inherent in a custodial situation. A typical non-custodial recording would be a tape-recorded telephone conversation (e.g., a telephone 'tap' or 'bug') or a police informant equipped, as here, with a concealed radio transmitter (a 'wire') which broadcasts to a receiver connected to a tape recorder. Equivalent clarity is required of tapes made in both custodial and non-custodial settings. *Compare McCollum v. State* (1991), Ind., 582 N.E.2d 804, 811–12 (recording of non-custodial telephone conversation admissible only if "of such clarity as to be intelligible and enlightening to the jury"), *with Lamar v. State* (1972), 258 Ind. 504, 512, 282 N.E.2d 795, 800 (recording of custodial interrogation must be "of such clarity as to be intelligible and enlightening to the jury."). Our supreme court, however, has recognized that some static and interference is inevitable on a recording made through use of a concealed radio transmitter or 'wire'. *Fassoth v. State* (1988), Ind., 525 N.E.2d 318, 324.

Although the foundational requirements for the quality of the recording are the same, recordings of statements made in custodial settings may require additional foundation regarding the voluntariness of the statement. For example, admission of a recorded confession also requires a showing that the statement was freely and voluntarily made and that a proper waiver of *Miranda* rights was executed. *See Lamar,* 258 Ind. at 513, 282 N.E.2d at 800.

We have reviewed the tape and agree with Lahr that much of his portion of the conversation is too faint to be readily intelligible[5] and find that its admission was error. That error was harmless, however, due to additional evidence corroborating the informant's story. Two police officers listened on their radios to the conversation between Denney and Lahr. Denney and both police officers testified to the contents of that conversation at trial. The testimony of Denney and both police officers was mutually corroborating and was also corroborated by the intelligible portion of the tape. Lahr himself admitted to the taped conversation and said that he thought Denney was "wacko" and tried to humor him.

The substance of the conversation was reported by three witnesses. With such corroboration, there is no potential for prejudice to Lahr through speculation about the tape's contents. Its admission, therefore, was harmless. *See Roller,* 602 N.E.2d at 171 (sufficient corroboration of informant's testimony reduces possibility of jury speculation about unintelligible portions of tape and makes its erroneous admission harmless).

### ISSUE THREE: IMPEACHMENT BY JUVENILE RECORD

Lahr next claims error because he was not allowed to impeach Denney through cross-examination relating to Denney's juvenile record. The trial court has discretion to determine the scope of cross-examination, and reversal will be warranted only upon a clear showing of abuse of that discretion. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280, 1282. As a general rule, evidence regarding juvenile delinquency proceedings cannot later be used for impeachment purposes. *Logston v. State* (1989), Ind., 535 N.E.2d 525, 527. Lahr claims an exception to that general rule, relying upon *Terrell v. State* (1987), Ind.App., 507 N.E.2d 633, *trans. denied,* and *Davis v. Alaska*

(1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

In *Terrell,* we found an exception to the general rule where the defendant declared in opening statement that he had "no record." 507 N.E.2d at 635. The State was then allowed to cross-examine the defendant about his juvenile record to rebut his false claim. Here, it was never claimed that Denney had no record; in fact, he had several criminal convictions and was extensively questioned about them.

In *Davis,* the United States Supreme Court held that the confrontation clause of the Sixth Amendment to the United States Constitution gives a defendant the right to cross-examine a crucial state witness who was on probation for a juvenile matter about his probation. 415 U.S. at 315–18, 94 S.Ct. at 1110–11, 39 L.Ed.2d at 353–56. The court held that evidence of the witness's probation status was admissible to show that the witness testified out of fear of probation revocation. *Id.*

Lahr argues that Denney was also on probation for a juvenile conviction and that provided him with good reason to cooperate with the State and to fabricate his charges against Lahr. Lahr misstates the record; Denney's probation was not on his juvenile adjudication. Denney was on probation for an adult theft conviction, and Lahr was allowed to cross-examine Denney about the conviction and resulting probation. The trial court's limitation of Lahr's cross-examination of Denney was not error.

### ISSUE FOUR: NEWLY DISCOVERED EVIDENCE

After his sentencing, Lahr filed a motion to correct error with the court. Attached to that motion was an affidavit of the trustee who had identified the note from Lahr to Hills referred to in Issue Two above. The trustee swore, in part, in that affidavit:

> less difficult for the jury to hear than it was for us in our review of the tape. With all of this in mind, we still find significant portions of the conversation recorded on the tape to be unintelligible.

---

5. We recognize that audio tape and recordings on it degrade over time and it is possible that the recording is no longer as clear as it was when played for the jury. It is also possible that the acoustics of the courtroom and the equipment used to play the tape for the jury made it more or

3. That during his testimony he stated that he had in fact read the contents of a certain letter entered into evidence, when in fact, he was mistaken, in that he had not read such contents.

4. That he was advised by the Jay County Prosecutor's Office that if he did not testify as requested, that the Prosecutor's Office would file drug trafficking charges against him relative to his conduct as a trustee at the Jay County Security Center.

5. That he did not disclose this during cross-examination and in fact, was unwilling to disclose this evidence to Defendant or his counsel until after entry of the jury verdict and judgment of conviction.

*Record* at 263–64.

■ To merit a new trial on his claim of newly discovered evidence, Lahr must show: 1) that the evidence has been discovered since the trial; 2) that the evidence is material and relevant; 3) that the evidence is not cumulative; 4) that the evidence is not merely impeaching; 5) that the evidence is not privileged or incompetent; 6) that due diligence was used to discover the evidence in time for trial; 7) that the evidence is worthy of credit; 8) that the evidence can be produced on a retrial of the case; and, 9) that the evidence will probably produce a different result on retrial. *See Thomas v. State* (1990), Ind.App., 562 N.E.2d 43, 48.

■ We find that the statements in the trustee's affidavit do not qualify as newly discovered evidence requiring a new trial. As Lahr himself acknowledges, the matters in the trustee's affidavit go to the credibility of that witness's testimony at trial. *Appellant's Brief* at 32. The newly discovered evidence is intended to attack the trustee's identification of the note and is merely impeachment of the trustee's testimony at trial. Also, at trial the trustee never testified that he had read the note, only that he recognized it. *Record* at 641. The trustee's statement in his affidavit that he had not read the note would have no evidentiary value and would not produce a different result on retrial.

6. IC 35–44–3–2 (1988 Ed.).

## ISSUE FIVE: LESSER–INCLUDED OFFENSE INSTRUCTION

■ Finally, Lahr contends that the trial court erred in refusing to instruct the jury that, if the evidence warranted, they could find Lahr guilty of assisting a criminal [6] as a lesser-included offense of the charged crime of Conspiracy to commit murder. Ind.Appellate Rule 8.3(A)(7) provides, in part, that: "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Lahr has failed to include his tendered instructions in his Brief and has consequently waived any error. *See Norris v. State* (1986), Ind., 498 N.E.2d 1203, 1206.

■ Furthermore, the trial court quite properly refused to give Lahr's tendered instructions. To determine whether instructions on a lesser included offense should be given, we conduct a two-step analysis: 1) whether the lesser offense is inherently or factually included in the greater offense; and, 2) whether the evidence at trial justifies giving the instruction. *Aschliman v. State* (1992), Ind., 589 N.E.2d 1160, 1161–62. A lesser included offense is an offense, every element of which is part of the statutory definition of the greater offense. *Id.*

■ To determine if one offense is inherently included within another, we examine the relevant statutes. Conspiracy requires an intent to commit a felony, an agreement with another to commit that felony, and an overt act in furtherance of that agreement. *Concepcion v. State* (1991), Ind., 567 N.E.2d 784, 790. The felony in this case was murder. Assisting a criminal is harboring, concealing, or otherwise assisting a person who has committed a crime or who is a fugitive from justice, with the intent to hinder the apprehension of that person, by one who is not the parent, child, or spouse of the criminal or fugitive. IC 35–44–3–2 (1988 Ed.). Because it is possible to conspire to commit murder without an intent to hinder the apprehension of a criminal or a fugitive

from justice, assisting a criminal is not inherently a lesser included offense of conspiracy.

 We next review the charging information to determine if assisting a criminal is factually included within the charged crime of Conspiracy to commit murder. *See Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 510. If the elements of the lesser offense are alleged in the information, the defendant may be entitled to an instruction on the lesser included offense. *Id.* The information, in part, charged that:

> "[I]n Jay County, State of Indiana, on or about December 27, 1991, Charles P. Lahr, with the intent to commit a felony, to-wit: Charles P. Lahr did conspire to kill another human being, to-wit: Richard K. Price, Jr., in that Charles P. Lahr knowingly agreed with David A. Denney to commit the felony of Murder, and Charles P. Lahr did perform an overt act in furtherance of the agreement, to-wit: Charles P. Lahr gave David A. Denney a .32 caliber handgun and bullets so that David A. Denney would kill Richard K. Price, Jr., so that said Richard K. Price Jr., would not testify against Charles P. Lahr in a pending criminal proceedings...."

*Record* at 17.

 A necessary element of assisting a criminal is the intent to hinder the apprehension or punishment of a person who has committed a crime. *Horn v. State* (1987), Ind.App., 503 N.E.2d 1235, 1236. By giving Denney a gun to kill Price, it was likely that Lahr intended to hinder his own prosecution and punishment for the drug sale that Price witnessed. This would not constitute assisting a criminal, however, because the crime requires an act done to hinder the apprehension or punishment of a person other than the actor. IC 35-44-3-2.

 Assisting a criminal, then, is neither inherently nor factually included in the greater offense of conspiracy in this case. Because we have determined that assisting a criminal is not included in the charged crime of Conspiracy to commit murder, we do not reach step two of our two-step analysis. We find that the trial court properly refused

Lahr's tendered instruction. *See Horn,* 503 N.E.2d at 1236.

Affirmed.

SULLIVAN and RUCKER, JJ., concur.