**Clifton MAURICIO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 02A03–9511–CR–383.**

Court of Appeals of Indiana.

Aug. 4, 1997.

Mark A. Thoma, Deputy Public Defender, Fort Wayne, for Appellant–Defendant.

Pamela Carter, Attorney General, Michael K. Ausbrook, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Clifton Mauricio appeals his conviction for murder.[1] He presents two issues for our review which we restate as follows:

---

1. IND.CODE § 35–42–1–1 (1993). Mauricio was also convicted of battery, a class C felony. IND. CODE § 35–42–2–1 (1993). However, none of Mauricio's allegations of error relate to his battery conviction.

I. Whether the trial court erred in failing to instruct the jury on lesser included offenses.

II. Whether the evidence was sufficient to sustain his conviction.

We affirm.

The facts most favorable to the verdict reveal that Mauricio was to meet his twin brother, Clayton, at a local car wash. While waiting for his brother, Mauricio talked with Arasteed Hughes. When Clayton arrived, Hughes walked to his car and suggested that Clayton fight with Raymond Britt. The two began fighting and the fight ended when Clayton kneed Britt in the groin. Britt returned to his car. Hughes then began fighting with Clayton. Hughes, who was larger than Clayton, wrestled Clayton to the ground and began punching him in the head.

Mauricio then pulled out a gun and shot Britt who was still standing by his car. Britt sustained gunshot wounds in his elbow and foot. Mauricio then ran to where Hughes and Clayton were fighting and shot Hughes three times from close range. Hughes sustained gunshot wounds in the back, the abdomen, and the hip. The shot in the back was fatal.

The State charged Mauricio with the murder of Hughes and battery upon Britt. After a jury trial, Mauricio was found guilty on both counts. This appeal ensued.

## I.

### *Instruction*

Mauricio first argues that the trial court erred by failing to instruct the jury on the lesser included offense of involuntary manslaughter. Instructing the jury lies solely within the discretion of the trial court. *Marshall v. State*, 621 N.E.2d 308, 320 (Ind.1993). A party who fails to tender an instruction on an issue cannot complain that the instructions were incomplete with regard to that issue. *Clark v. State*, 561 N.E.2d 759, 764

(Ind.1990). This includes instruction on lesser included offenses. *Gonzales v. State*, 642 N.E.2d 216, 217 (Ind.1994). Here, the record does not show a proper tender of instructions on lesser included offenses by Mauricio.[2] Thus, he cannot complain because the instructions were incomplete. *Gonzales*, 642 N.E.2d at 217; *Clark*, 561 N.E.2d at 764.

Merely giving the number of a pattern jury instruction is not authorized under Ind. Crim. Rule 8 as suggested by the dissenting opinion. Ind.Trial Rule 51(E) does allow the use of Indiana Pattern Jury Instructions in civil trials and allows attorneys to simply reference the instruction number rather than set out the instruction verbatim in the tender of instructions. However, the same use of Indiana Pattern Jury Instructions by merely referring to an instruction number is not mentioned in C.R. 8. Instead, C.R. 8(D) provides that the:

Requested instructions must be reduced to writing (identified as to the party making submission), separately numbered, and accompanied by a cover sheet signed by the party, or his attorney, who request such instructions and will be deemed sufficiently identified as having been tendered by the parties or submitted by the court if it appears in the record from an order book entry, bill of exceptions, or otherwise, by whom the same were tendered or submitted. Where final instructions are submitted to the jury in written form after having been read by the court, no indication of the party or parties by whom instructions were tendered should appear on any instruction.

The entirely different procedures provided in T.R. 51(E) and C.R. 8(D) conflict with each other. "The Indiana rules of trial and appellate procedure shall apply to all criminal appeals *so far as they are not in conflict with any specific rule adopted by this court for the conduct of criminal proceedings.*" (Emphasis added). Ind.Crim. Rule 21. T.R.

---

2. Although Mauricio states in his argument that he tendered an instruction on involuntary manslaughter, the record does not indicate a proper tender. His tendered instruction only states:

    Instruction No. *3.09 Involuntary Manslaughter*
    3. Battery ... (part one)

Record at 101. This is an incomplete instruction at best. A tendered instruction which is incomplete and insufficient is properly refused by a trial court. *Corley v. State*, 663 N.E.2d 175, 178 (Ind.Ct.App.1996).

51(E) has no application as suggested by the dissenting opinion.[3]

▆ Too, it should be noted that T.R. 51(E) states: "... provided, however that in the event of an appeal, where any objections are made to the giving of such instructions or the refusal to give such instruction, such numbered instructions shall be set forth verbatim in the argument section of the brief where argument is presented with reference to the refusal to give or the giving of such numbered instruction." Ind.Appellate Rule 8.3(A) also requires that any instructions be set out verbatim in the argument section of the brief. This Mauricio failed to do which amounts to a waiver even if T.R. 51(E) applies. *Lahr v. State*, 640 N.E.2d 756, 763 (Ind.Ct.App.1994), *trans. denied.* Judge Sullivan concurred with Judge Kirsch and Judge Rucker in *Lahr* that because Lahr failed to include the tendered lesser included offense instruction verbatim in the argument section of his brief, he waived any error. *Id.*

▆ Waiver notwithstanding, Mauricio's argument also fails on the merits. A person commits involuntary manslaughter if he kills someone while attempting to commit battery. IND.CODE § 35-42-1-4 (1993). Even though involuntary manslaughter is factually included in the charged offense of murder, to support the giving of the tendered instruction there still must exist a *serious* evidentiary dispute concerning Mauricio's intent such that a reasonable juror could conclude that Mauricio committed involuntary manslaughter but did not commit murder. *Wright v. State*, 658 N.E.2d 563, 567 (Ind.1995). The evidence presented does not support the giving of the requested instruction on involuntary manslaughter.

▆ Here, although Mauricio testified that he did not intend to kill Hughes, contrary to the dissent's position, the evidence overwhelmingly points in the opposite direction. No witnesses, other than the Mauri-

cio brothers, testified that Hughes had a gun in his hands. Instead, the evidence shows that Hughes' gun was in his pocket with the safety engaged. In addition, Mauricio did not simply fire the gun in Hughes' direction in an attempt to stop the fight. He ran to where Hughes and Clayton were fighting and shot Hughes three times at close range in the hip, the back and the abdomen. The location of these shots could not lead to an inference that Mauricio simply intended to "touch" Hughes, but not kill him. The intent to kill can be inferred from the use of a deadly weapon *in a manner likely to cause death or serious bodily injury. Cate v. State*, 644 N.E.2d 546, 548 (Ind.1994). Nothing in the manner in which the crime was committed leads to the inference of any type of intent other than the intent to kill. *See, Castro v. State*, 580 N.E.2d 232, 236 (Ind. 1991) (because death is likely result of prolonged, severe beating, no issue of incidental death present which would support instruction on involuntary manslaughter); *Smith v. State*, 506 N.E.2d 31, 33 (Ind.1987) (four gunshot wounds to the back do not support intent to simply batter and giving of instruction on involuntary manslaughter); *Cardine v. State*, 475 N.E.2d 696, 700 (Ind.1985) (giving of instruction on involuntary manslaughter not supported where despite defendant's assertion of self-defense, evidence showed that he stabbed victim with sufficient force that entire blade embedded in body and handle broke); *Compare, Lynch v. State*, 571 N.E.2d 537, 539 (Ind.1991) (evidence concerning defendant's delusions and his immediate call to 911 support inference that he did not intend to kill victim but merely injure him); *Brown v. State*, 659 N.E.2d 652, 657 (Ind.Ct.App.1995) (giving of instruction on involuntary manslaughter supported where defendant immediately called 911 after shooting). Because the evidence overwhelmingly shows Mauricio's intent to kill Hughes, no reasonable juror could conclude that Mauricio intended simply to batter him and find

---

**3.** C.R. 8(H) does reference the procedures found in T.R. 51(C). C.R. 8(H) provides:

> (H) The manner of objecting to such instructions, of saving questions thereon, and making the same a part of the record shall be the same

as in Rule 51(C) of the Rules of Trial Procedure.

However, this is an entirely different section and procedure than that found in T.R. 51(E) and does not render T.R. 51(E) applicable.

him guilty of only involuntary manslaughter.[4] Accordingly, the tendered instruction was correctly refused. *Wright,* 658 N.E.2d at 567.

## II.

### *Sufficiency*

■ Mauricio also argues that the evidence was insufficient to sustain his conviction. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind. 1995), *reh. denied.* We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

■ The basis of Mauricio's sufficiency argument is his contention that the State failed to rebut beyond a reasonable doubt his claim of defense of another. To prevail on his claim, Mauricio had to show that he was in a place he had a right to be, he acted without fault, and he acted with a reasonable fear of death or great bodily injury. *Id.* In addition, the amount of force used must be reasonable and may only be used with the belief that such a degree of force is necessary. *Crisler v. State,* 509 N.E.2d 822, 823 (Ind. 1987). Once Mauricio presented evidence to raise the issue of defense of another, the burden shifted to the State to disprove one of the elements beyond a reasonable doubt. *Jordan,* 656 N.E.2d at 817.

Here, Mauricio testified that he feared for his brother's life because Hughes had a gun in his hand. However, the State presented evidence which showed that Hughes' gun was in his pocket with the safety engaged. The jury could reasonably find from this evidence that Mauricio did not have a reasonable fear

that his brother would suffer death or great bodily harm because Hughes did not have a gun in his hand. *Id.*

Furthermore, the evidence indicates that Mauricio shot Hughes three times at close range. The location of the three shots in Hughes' back, abdomen, and hip do not evidence an intent to simply wound Hughes. Because the evidence showed that Hughes did not have a gun in his hands and that Mauricio used an unreasonable degree of force, the jury could reasonably conclude that the use of deadly force was unnecessary to stop the attack. *Crisler,* 509 N.E.2d at 823. Accordingly, we conclude there is evidence of probative value to support the conviction. *Jordan,* 656 N.E.2d at 817.

Affirmed.

GARRARD, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, J., dissents with separate opinion.

GARRARD, Judge, concurring and dissenting.

■ I concur with the majority except for its determination that under the Indiana Rules of Criminal Procedure it is not an adequate tender of one of the pattern jury instructions to simply refer to it in the manner set forth in T.R. 51(E). I would find that the tender to the trial court was proper and adequate.

On the other hand, the purposes to be met by setting forth verbatim, in appellate briefs, instructions tendered by the parties are distinct and meaningful. The requirement to do so is, also, specifically imposed by both T.R. 51(E) and A.R. 8.3(A). Thus, any potential error was waived for failure to set forth the requested instruction in the brief.[5]

---

4. A serious dispute in the evidence regarding intent to justify an instruction on a lesser included offense is left to the judgment of the trial judge not the jury. The dissent appears to be concerned in part that this evidence will be kept from the jury. It will not. The jury will just not be instructed to consider a lesser included offense based on the evidence. The evidence of guilt is for the jury not the question of a serious

dispute. If the dissent's position were valid, a lesser included offense instruction would have to be given to the jury no matter how weak and unconvincing the evidence appears to the trial judge.

5. It should be recalled that pattern instructions are not *per se* correct statements of the law.

I therefore concur, except as to the issue of adequate tender of pattern jury instructions in a criminal case, and on that issue I join the dissent.

SULLIVAN, Judge, dissenting.

I respectfully dissent upon grounds that there was an adequate tender of an instruction upon involuntary manslaughter and that there was a sufficient dispute as to the matter of intent as to require that such instruction be given to the jury. Although the evidence was sufficient to permit a reasonable jury to conclude that Mauricio did, in fact, knowingly and intentionally kill Hughes, a different, but also reasonable, trier of fact might conclude to the contrary.

With respect to the tender of the instruction, trial counsel tendered as Instruction 10, the following:

"Instruction No. 3.09   Involuntary Manslaughter

3.   Battery ... (Part one)" (Record 101)

The trial court noted that, in his view, the tender was "not an adequate tender." Record at 567.   The trial court erred in this conclusion.   It is clear that trial counsel was seeking to incorporate by reference, rather than duplicating verbatim, *Indiana Pattern Jury Instructions–Criminal* No. 3.09 (1993 Supp.), and to reflect that the killing occurred while the defendant was committing or attempting to commit Battery as a Class C felony pursuant to I.C. 35–42–2–1(3).   This procedure is specifically authorized by Rule 51(E) of the Indiana Rules of Trial Procedure, which reads as follows:

"Any party requesting a trial court to give any instruction from the Indiana Pattern Jury Instructions, prepared under the sponsorship of the Indiana Judges Association, may make such request in writing without copying the instruction verbatim, by merely designating the number thereof in the publication." [6]

**6.** Rule 21 of the Indiana Rules of Criminal Procedure, provides:
"The Indiana rules of trial and appellate procedure shall apply to all criminal appeals so far as they are not in conflict with any specific rule adopted by this court for the conduct of criminal proceedings."

The instruction was a correct statement of law and Mauricio was entitled to have it given for the reason that involuntary manslaughter is an included offense of murder. *Baker v. State* (1991) Ind.App. 569 N.E.2d 369.   Where, as here, the killing is accomplished by a shooting, such constitutes a battery and renders involuntary manslaughter an included offense of the murder charge. *Lynch v. State* (1991) Ind., 571 N.E.2d 537; *Brown v. State* (1995) Ind.App., 659 N.E.2d 652; *Simpson v. State* (1994) Ind.App., 628 N.E.2d 1215.   The sole distinguishing element between murder and involuntary manslaughter in such circumstances is the intent to commit the greater offense. *Meriweather v. State* (1995) Ind.App., 659 N.E.2d 133.

The majority cites *Lahr v. State* (1994) Ind.App., 640 N.E.2d 756, and correctly so, for the proposition that failure to include tendered instructions in the appellate brief waives the error, if any.   In *Lahr*, however, the instruction sought was not merely a straightforward Pattern Instruction defining the elements of Assisting a Criminal (Pattern Instruction No. 5.21) but was, rather, a request that the jury be instructed that "if the evidence warranted, they could find Lahr guilty of assisting a criminal as a lesser-included offense of the charged crime of Conspiracy to commit murder."   640 N.E.2d at 763.   The instruction requested was therefore apparently a combination of at least two general Pattern Instructions—the Assisting a Criminal instruction and an Included Offenses instruction (Pattern Instruction 13.27). The particular phrasing of such a hybrid becomes the subject of careful analysis as to its propriety and applicability.   The propriety is therefore not a clear-cut decision as is true of the tender of a straightforward pattern instruction.

Be that as it may, and most importantly, despite its recitation of the general waiver principle, the *Lahr* court proceeded to discuss the substantive merits of the requested

Crim.R. 8(D) states:
"Requested instructions must be reduced to writing ...".
The request made here was in writing and, of course, all of the Indiana Pattern Jury Instructions are in written form.   The request therefore conforms both to Crim.R. 8(D) and T.R. 51(E).

instruction and did not decide the issue upon the concept of waiver. To the same effect is *Riley v. State* (1987) Ind., 506 N.E.2d 476, wherein our Supreme Court noted the waiver principle but proceeded to hold that the tendered lesser offense instructions were correctly refused.

The waiver principle contained within Ind.Appellate Rule 8.3(A)(7) is not a rigid or directory provision. As noted in *Sedelbauer v. State* (1983) Ind.App., 455 N.E.2d 1159, 1163, quoting from *Davis v. State* (1976) Ind., 265 Ind. 476, 355 N.E.2d 836:

"We invoke Appellate Rule 8.3 to hold an appellant's specification of error waived only when we find his non-compliance with the rule sufficiently substantial to impede our consideration of the issue raised. In this case we find that the issue of the propriety of this instruction is presented in a manner sufficiently clear to allow us to reach the substance of the appellant's contention."

The case before us calls for application of the same reasoning and warrants consideration of the issue.

Notwithstanding its conclusion that the instruction tender was inadequate, the trial court nevertheless considered the giving of an involuntary manslaughter instruction but indicated an inclination to refuse the instruction in light of the evidence as to intent. Record at 572–574. Trial counsel had correctly observed that a given defendant might intend to shoot someone but not intend to kill them and alluded to the separate charge filed by the State which alleged the separate shooting injury to Britt as a battery rather than, presumably, an attempted murder. The court, however, apparently seized upon the evidence that Mauricio walked close to the victim and fired three times.

While I might agree that such evidence points strongly to the existence of the culpability required for a murder conviction, I am unwilling to conclude that the evidence permits no other reasonable conclusion as to intent.

If this record reflected evidence that the car-wash meeting had been pre-arranged for purposes of a "head-to-head" confrontation, contemplating firearms, I might have concurred. I might surmise that this was, in part, a "gang" controversy and a preconceived battle which led to Hughes' death. That surmise would favor a concurrence. But the State's proof does not permit me to elevate my surmise to a reasonable inference of the facts surmised.

Given the circumstances of prior shooting incidents involving the defendant, of the nature of the physical confrontations between his brother and Britt and Hughes, and the fact that Mauricio testified he thought Britt had a firearm and that Hughes did in fact have a gun and was using it to beat his brother, I believe that the element of intent was in genuine evidentiary dispute. *Lynch, supra,* 571 N.E.2d 537; *Brown, supra,* 659 N.E.2d 652. The testimony of the Mauricio brothers was not of such "incredible dubiosity" or so "inherently unbelievable" as to be rejected out-of hand as a matter of law. *See Davis v. State* (1995) Ind., 658 N.E.2d 896. The jury is entitled to believe or disbelieve evidence presented by the State as well as to believe or disbelieve that presented by the defendant. *Harris v. State* (1993) Ind., 617 N.E.2d 912; *Owens v. State* (1989) Ind.App., 543 N.E.2d 673. It is well established that a conviction may be sustained upon the uncorroborated testimony of a single witness. *Taylor v. State* (1993) Ind.App., 614 N.E.2d 944. It is not necessary that the single witness be an objective disinterested party. A conviction may be supported even if the sole witness is the victim. *McKinney v. State* (1990) Ind., 558 N.E.2d 829. So too, a given jury may choose to believe the testimony of the defendant and to acquit or find him guilty of a lesser offense. *See Davidson v. State* (1991) Ind., 580 N.E.2d 238. It is the prerogative of the jury to weigh the evidence and to determine who, in their view, is telling the truth. *Graves v. State* (1984) Ind., 472 N.E.2d 190. In my view there is a sufficient, genuine evidentiary dispute so as to render refusal to give the involuntary manslaughter instruction reversible error.

I would reverse the murder conviction and remand for a new trial.