# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 08 2019, 9:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Don R. Hostetler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of K.S., Minor Child, and her Mother, J.H. | February 8, 2019 |
| | Court of Appeals Case No. 18A-JT-2100 |
| J. H., | |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Marilyn Moores, Judge |
| Indiana Department of Child Services, | The Honorable Scott Stowers, Magistrate |
| *Appellee-Petitioner,* | Trial Court Cause No. 49D09-1712-JT-1313 |
| And | |
| Child Advocates, Inc., | |



*Appellee-Guardian Ad Litem.*

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, J.H. (Mother), appeals from the trial court's Order terminating her parental rights to her minor child, K.S. (Child).

We affirm.

# ISSUE

Mother presents three issues on appeal which we consolidate and restate as: Whether the trial court's findings and conclusions supporting its Order terminating her parental rights to Child were clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

[4] Child was born to Mother and T.S. (Father)[1] in August 2015. On December 16, 2016, the Department of Child Services (DCS) filed a petition alleging that Child was a child in need of services (CHINS) due to Mother failing to provide Child with a safe, stable living environment, Mother leaving Child for extended periods of time, Mother failing to provide Child with basic care and necessities, and Mother failing to ensure the Child received appropriate medical care. Child was removed and placed in foster care, where she resided throughout the instant proceedings. On March 1, 2017, after Mother waived fact-finding and Father admitted the allegations of the CHINS petition, Child was found to be a CHINS. Mother was ordered to participate in home-based case management, substance abuse assessment and recommended treatment, and random drug screens. The trial court ordered that parenting time would be fully supervised outside of Mother's home.

[5] Mother's supervised parenting time was problematic in that she was often using her cell phone, did not always bring appropriate food, and did not always come prepared with materials to change Child's diaper. In addition, Mother tested positive for marijuana on multiple occasions. On June 28, 2017, pursuant to a DCS recommendation, the trial court suspended Mother's parenting time. The trial court made clear to Mother that her parenting time would be restored if she

---

[1] Father's parental rights were terminated in the same proceedings. Father is not a party to this appeal.

engaged in services and demonstrated sobriety by submitting clean drug screens.

[6] In July 2017, Mother completed a substance abuse assessment which revealed that she used marijuana on a daily basis as a coping mechanism for stress. The assessment resulted in a recommendation that she be treated for substance abuse and mental health issues, including major depressive disorder and ADHD. Treatment recommendations included attendance at two group therapy sessions per week and one individual therapy session per week. Treatment goals were sobriety, medication management, and the acquisition of coping skills. Mother initially attended group therapy but eventually ceased attending after three months. Mother never attended individual therapy. Mother's longest period of sobriety was three weeks. Mother tested positive for marijuana throughout the CHINS proceedings, and on two occasions she tested positive for amphetamine and methamphetamine use. During the pendency of the CHINS case, Mother gave birth to a second child, and Mother tested positive for marijuana at the time.[2] Mother did not successfully complete any substance abuse or mental health treatment.

[7] The goals of Mother's home-based case management were to improve housing stability, transportation issues, and parenting skills. Mother had a total of seven referrals for home-based case management due to non-compliance and lack of

---

[2] This child has also been removed from Mother's care but is not subject to the instant appeal.

engagement. During the CHINS proceedings, Mother moved in with a cousin who was a substance abuser and who had other children in the home. For fear that DCS would remove the cousin's children, Mother refused to allow her case manager to provide services in the home. Mother also refused to provide DCS with the cousin's address or name. Mother was sporadically employed, staying at jobs one or two months at a time. Mother requested help improving her parenting skills and was referred to a homemaker parenting aide. Mother completed only three of the ten lessons available to her through the parenting aide service.

[8] On December 15, 2017, the State filed a petition seeking to terminate Mother's parental rights to Child (TPR). On May 22, 2018, the trial court held the first of two hearings on the TPR. Mother admitted at the hearing that she was not engaging in services, was not employed, had continued to use marijuana and methamphetamine throughout the course of the proceedings, and was still living with her cousin at an unknown location. Mother acknowledged that parenting time had never been re-established due to her failure to engage in services and that she had not taken advantage of the services offered to her, and that as a result, she and Child had had no contact since June 2017.

[9] The family case manager, Paris Barnett (FCM Barnett), who was with the case since its inception, testified that Mother told her on many occasions that her marijuana use was not a "big deal." (Transcript Vol. II, p. 105). She had also heard Mother make statements that made her doubt Mother's claims that her positive methamphetamine screens were false positives. In addition, FCM

Barnett had always texted Mother with up-to-date access and dial-in codes for her drug screens so those were available to her up to the TPR hearing. Mother had not submitted a drug screen since February 2018.

[10] Mother did not meet her treatment goals for home-based case management, despite DCS having been granted special permission by the trial court to allow Mother to essentially dictate the terms of her treatment in order to facilitate her compliance. When Mother had expressed difficulty with scheduling her services due to employment, FCM Barnett found Mother providers who worked nights and weekends. FCM Barnett had encouraged providers to keep Mother's case open even when she had not complied so that she could have additional opportunities to complete services. Despite all these efforts, Mother's engagement did not improve. It was FCM Barnett's opinion that Mother's relationship with Child posed a continuing threat to Child and that termination was in Child's best interests due to Mother continuing to live with a substance abuser, Mother's lack of stable income, and her failure to participate in services.

[11] A second TPR hearing was held on July 17, 2018. Mother did not attend this hearing, and no explanation was provided for her absence. FCM Barnett testified that she had attempted to arrange a drug screen for Mother after the first TPR hearing, but Mother did not come to the appointment. Mother was provided new access codes and dial-up information to submit drug screens, but she had submitted none. Mother had been asked to schedule a family and child team meeting, but despite many efforts on FCM Barnett's part to arrange it,

Mother had not complied. Mother continued to live with her cousin at an undisclosed location.

[12] Child's guardian *ad litem*, Joyce Box (GAL Box), testified that Child was thriving in her placement in foster care. Child was well-bonded with her foster family, who was planning to adopt her. Child had no special needs apart from occupational therapy which her foster family was facilitating. It was GAL Box's opinion that termination of Mother's rights was in Child's best interests because Mother had not successfully completed services, Mother had not had parenting time with Child since June 2017, and because of Child's success in her pre-adoptive placement.

[13] On August 7, 2018, the trial court entered its Order terminating Mother's parental rights to Child. The trial court made the following relevant findings and conclusions:

> 34. [Child] has been placed in [f]oster [c]are for fifteen months. She is thriving and doing well. She is bonded with her foster parents and this is a pre-adoptive placement.
>
> 35. There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside of the home will not be remedied by [Mother]. [Mother has] had nearly two years to put forth an effort and [has] not done so. [Mother has] continued to struggle with addiction to illicit substances and maintaining stability . . . [Mother] is residing with a cousin who is a drug user.
>
> 36. Continuation of the parent-child relationship poses a threat to [Child's] well-being in that it would serve as a barrier for her

obtaining permanency through an adoption when [Mother is] unable to provide permanency and parent. [Mother has not] seen [Child] in over a year.

37. Termination of the parent-child relationship is in [Child's] best interests. Termination would allow her to be adopted into a stable and permanent home where her needs will be safely met.

* * *

39. [GAL Box] agrees with the permanency plan of adoption as being in [Child's] best interests.

Mother now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

Mother contends that DCS did not prove its case for termination with clear and convincing evidence and that, therefore, the trial court's Order was clearly erroneous.

## I. *Standard of Review*

It is well-settled that when reviewing the evidence supporting the termination of parental rights we neither reweigh the evidence nor determine the credibility of witnesses. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). In addition, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id*. "We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment." *Id*. We must give due regard to the trial court's opportunity to judge the credibility of

witnesses firsthand, and we do not set aside the trial court's findings or judgment unless it is clearly erroneous. *Id.*

## II. *Termination of Mother's Rights*

"[O]ne of the most valued relationships in our culture" is that between a parent and his or her child. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009), *reh'g denied.* Indeed, "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Accordingly, the Fourteenth Amendment to the United States Constitution safeguards "the traditional right of parents to establish a home and raise their children." *Id.* Nevertheless, parental interests are not absolute; rather, termination of parental rights is appropriate when parents are unable or unwilling to meet their parental responsibilities. *In re A.B.*, 887 N.E.2d 158, 164 (Ind. Ct. App. 2008).

Termination of parental rights is an extreme sanction that is intended as a "last resort" and is available only when all other reasonable efforts have failed. *In re C.A.*, 15 N.E.3d 85, 91 (Ind. Ct. App. 2014). As such, before a termination of parental rights is merited, the State is required to prove a host of facts by clear and convincing evidence, the most relevant for our purposes being that there is a reasonable probability that the conditions which resulted in the child's removal or continued placement outside the home will not be remedied by the parents, there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child, and that

termination is in the best interests of the child. Ind. Code §§ 31-35-2-4(b)(2)(B)(i)-(ii), (C); 31-37-14-2.

## A. *Failure to Remedy Conditions*

When reviewing a trial court's determination that the conditions that resulted in the child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *E.M.*, 4 N.E.3d at 642-43. First, we must identify the conditions that led to removal or placement; second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id*. at 643. When engaging in the second step of this analysis, a trial court must judge a parent's fitness as of the time of the TPR proceeding, taking into account evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. This delicate balance is entrusted to the trial court, and a trial court acts within its discretion when it weighs a parent's prior history more heavily than efforts made only shortly before termination. *Id*. "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id*. When determining whether there has been a failure to remedy conditions, a court may consider not only the basis for a child's initial removal, but also any reasons for a child's continued placement away from the parent. *In re D.K.*, 968 N.E.2d 792, 798 (Ind. Ct. App. 2012).

[20] Here, the conditions that resulted in Child's removal were Mother's inability to provide a safe and stable living environment, Mother leaving Child for extended periods of time, Mother failing to provide Child with basic care and necessities, and Mother failing to ensure the Child received appropriate medical care. Child's continued placement outside the home was also due to Mother's drug use. Mother was referred to a number of services to address these conditions, including home-based case management, substance abuse assessments and treatments, and drug screens. Mother failed to complete any of those services and admittedly failed to take advantage of the opportunities provided to her over the eighteen months of the CHINS and TPR proceedings, even after her parenting time with Child was rescinded. At the time of the TPR hearings, Mother was still living with her substance-abusing cousin at a location she would not share with DCS, she was still unemployed, and she had not submitted any drug screens since February 2018 after testing positive for illicit substances throughout the proceedings. In light of this evidence of a lack of change in Mother's circumstances and her habitual patterns of conduct, we conclude that the trial court acted within its discretion when it concluded that Mother continued to struggle with addiction and maintaining stability. *See E.M.*, 4 N.E.3d at 643.

[21] Mother maintains that DCS failed to prove its case because she refrained from drug use for three weeks, "completed about 60 percent of group therapy treatment," and made "40 percent progress in group therapy treatment." (Appellant's Br. p. 15). However, her mental health therapist testified that

Mother completed sixty percent of her group therapy in December 2017, not over all, and her forty percent progress rate applied only to the three months of group therapy she actually attended. Mother also presents the same argument she made at trial, namely that she had difficulty making her service appointments because of her employment. However, this argument was undercut by evidence that FCM Barnett accommodated her needs by finding service providers who worked nights and weekends to facilitate her engagement. Ultimately, these arguments are unavailing because they are essentially an invitation for us to consider evidence that does not support the trial court's Order, in contravention to our standard of review. *See id.* at 642.

[22] Mother also contends that her expressed willingness at the first TPR hearing to participate in services, her act of contacting DCS service providers in the week preceding the first TPR hearing, and her stated desire to change employment illustrate that DCS did not meet its burden of proof. However, the trial court was not obligated to credit Mother's late-breaking efforts. *See In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013) (holding that a trial court may "disregard the efforts . . . made only shortly before termination and to weigh more heavily [a parent's] history of conduct prior to those efforts."). Mother also challenges the chain of custody of the samples she provided for her drug screens. However, Mother did not object to the admission of any of the drugs screen results at trial, and thus she waived any chain of custody argument. *See Lahr v. State*, 640 N.E.2d 756, 761 (Ind. Ct. App. 1994) (holding that a failure to object on chain of custody grounds at trial results in waiver of the issue for appeal), *trans. denied*.

We see no error, let alone clear error, in the trial court's findings or conclusions that there was a reasonable probability that the conditions resulting in removal or continued placement would not be remedied.[3] *See E.M.*, 4 N.E.3d at 642.

### B. *Child's Best Interests*

[23] Mother also challenges the trial court's conclusion that termination of her parental rights was in Child's best interests. Our supreme court has recently recognized that one of the most difficult aspects of a termination of parental rights determination is the issue of whether the termination is in the child's best interests. *Id.* at 647 (noting that the question "necessarily places the children's interest in preserving the family into conflict with their need for permanency"). The trial court's determination that termination was in the child's best interests requires it to look at the totality of the evidence of a particular case. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. "In doing so, the trial court must subordinate the interests of the parents to those of the children involved." *Id.* We have held that a recommendation by the case manager and the CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests.

---

[3] Having concluded that there was a reasonable probability that the conditions meriting removal or continued placement would not be remedied, we decline to address Mother's argument regarding the trial court's conclusion that her continued relationship with Child posed a threat to Child. *See In re A.P.*, 882 N.E.2d 799, 807 (Ind. Ct. App. 2008) (noting that the termination statute is written in the disjunctive and declining to address Father's argument regarding his continued threat to the child where the evidence supported trial court's conclusion that the conditions meriting removal had not been remedied).

*A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[24] Here, Mother exhibited either an unwillingness or an inability to provide Child with a safe, secure home free from substance abuse. After Mother's parenting time was suspended in June 2017, Mother was given a clear directive that, in order to resume supervised parenting time, she must engage in services and submit clean drug screens. Mother was not successful in either of those directives, despite the extra efforts of DCS and its service providers to accommodate her needs. It is particularly troubling that, despite a court order directing her to do so, Mother refused to divulge where and with whom she was living out of fear that DCS would remove children already present in the home because of drug use occurring there. By the time of the second TPR hearing, Mother had not had any contact with Child since June 2017. Child was doing well in her pre-adoptive placement, was well-bonded with her foster family, and was having all her needs met. In addition, FCM Barnett and GAL Box both opined that it was in Child's best interests that Mother's parental rights be terminated.

[25] Mother contends that the trial court's conclusion that termination was in Child's best interests was legally deficient because the trial court merely concluded that Child "would purportedly be better off in an adopted home" and that termination was based solely on the opinions of FCM Barnett and GAL Fox that termination was in Child's best interests. (Appellant's Br. p. 18). However, the trial court made many findings that supported its 'best interests'

conclusion, including that Mother did not have stable employment or housing and was residing with drug users (Finding #24), she had not successfully addressed her substance abuse and had not submitted drug screen since February 2018 (Findings #7-15, 20, 25, 27), Mother had not completed her other services (Findings #16-19, 26, 28), GAL Box agreed that adoption was in Child's best interests (Finding #39), and that Child was thriving in her pre-adoptive home (Finding #34). As such, the trial court's determination was also supported by findings regarding Mother's deficiencies that impacted her parenting and was not simply a conclusion that Child would be better off in the adoptive home, nor was it a rubber stamping of the opinions of FCM Barnett and GAL Fox. Given the totality of the evidence, we cannot conclude that the trial court's conclusion that termination of Mother's parental rights was in Child's best interest was clearly erroneous. *See id.*; *E.M.*, 4 N.E.3d at 642.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's conclusions that there was a reasonable probability that the conditions meriting removal or continued placement would not be remedied and that termination was in Child's best interests were not clearly erroneous.

Affirmed.

Kirsch, J. and Robb, J. concur