John L. KETCHAM, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A05–0204–CR–160.

Court of Appeals of Indiana.

Jan. 9, 2003.

Robert D. Hepburn, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

John Ketcham appeals his conviction of voluntary manslaughter as a Class A felony. In particular, he contends that the trial court erred in refusing to instruct the jury on involuntary manslaughter and in admitting into evidence an autopsy photograph of the victim's heart removed from his body. Ketcham also contends that the trial court erred in sentencing him to the maximum term of fifty years by improperly weighing the aggravators and mitigator and that his sentence is manifestly unreasonable.

Because Ketcham failed to designate in writing the number of the pattern jury instruction and to prove that a serious evidentiary dispute existed, we find that the trial court did not err in refusing to instruct the jury on involuntary manslaughter. Furthermore, because Ketcham failed to prove that the probative value of the autopsy photograph was substantially outweighed by the danger of unfair prejudice, we find that the trial court did not err in admitting the photograph into evidence. Additionally, because Ketcham has failed to establish that the trial court erred in balancing the four aggravators against the sole mitigator, we find that the trial court did not err in sentencing him to the maximum term. Lastly, considering the nature and circumstances of the crime as well as Ketcham's criminal history and character, we cannot conclude that his sentence is manifestly unreasonable. We therefore affirm.

### Facts and Procedural History

On September 4, 2001, Edward Sims, Dustin Sluder, and Delbert Higginbotham were driving around Terre Haute in Sims' car when they saw Ketcham riding his

bicycle. Sims began chasing Ketcham in his car. At one point, Sims stopped his car, got out, and began chasing Ketcham on foot. However, Sims failed to catch Ketcham. When Sims returned to his car, he explained to Sluder and Higginbotham that there were hard feelings between him and Ketcham.

Following the chase, Ketcham went to Ronald Lawrence's house, where he was staying at the time. Lawrence arrived home approximately twenty minutes later and told Ketcham that Sims and his friends had just "jumped" him and Paul Jerling. Tr. p. 226. Ketcham then took Lawrence's gun, which had been stolen a few days before from a third party, and went looking for Jerling along with Lawrence. Shortly thereafter, Ketcham and Lawrence encountered Sims, Sluder, and Higginbotham, who were driving around in Sims' car. Sims stopped his car, and as he and Sluder exited the car, Ketcham fired two shots from about fifteen feet away. As Sims and Sluder retreated into Sims' car, Ketcham fired three more shots into the car, this time from about six feet away. Once inside the car, Sims told Higginbotham that he had been shot. As Sims began to speed away, he started to convulse. Higginbotham was forced to grab the wheel and crash the car into a pole in order to avoid driving into traffic. Police arrived, and an ambulance took Sims to the hospital, where he later died from a single gunshot wound to the abdomen and chest.

On September 6, Detective Michael Miner of the Terre Haute Police Department videotaped an interview with Ketcham. In the interview, Ketcham stated that he shot five or six times at Sims' car because he "was tired of being harassed," "chas[ed]," and "pick[ed] on." Tr. p. 225, 229. The State subsequently charged Ketcham with Murder [1] and Carrying a Handgun without a License as a Class C felony.[2] At trial, the trial court also instructed the jury on Voluntary Manslaughter as a Class A felony [3] and Reckless Homicide as a Class C felony [4] as lesser-included offenses of murder. Following trial, the jury found Ketcham guilty of voluntary manslaughter and carrying a handgun without a license. Following a sentencing hearing, the trial court sentenced Ketcham to the maximum term of fifty years for voluntary manslaughter and the presumptive term of four years on the handgun conviction, to be served concurrently. This appeal ensued.

## Discussion and Decision

Ketcham raises four issues on appeal, none of which challenge his carrying a handgun without a license conviction. First, he contends that the trial court erred in refusing to instruct the jury on involuntary manslaughter as a lesser-included offense of murder. Second, Ketcham contends that the trial court erred in admitting into evidence an autopsy photograph of Sims' heart removed from his body. Third, he contends that the trial court erred in sentencing him to the maximum term of fifty years for voluntary manslaughter. Lastly, Ketcham contends that his sentence for voluntary manslaughter is manifestly unreasonable. We address each issue in turn.

### I. Involuntary Manslaughter Instruction

Ketcham contends that the trial court erred in refusing to give the pattern jury

---

1. Ind.Code § 35–42–1–1(1).

2. Ind.Code §§ 35–47–2–1, 35–47–2–23(c)(2)(B).

3. Ind.Code § 35–42–1–3(a)(1).

4. Ind.Code § 35–42–1–5.

instruction on involuntary manslaughter as a lesser-included offense of murder. The State responds that Ketcham waived this issue by not tendering the pattern jury instruction.

■ "[A] tendered instruction is necessary to preserve error because, without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request." *Ortiz v. State*, 766 N.E.2d 370, 375 (Ind.2002) (quotation omitted). In *Mauricio v. State*, 683 N.E.2d 1329 (Ind.Ct.App.1997), this Court addressed this principle in the context of tendering a jury instruction to the trial court that merely designated the number of a pattern jury instruction. In that case, the defendant tendered an instruction to the trial court that provided:

Instruction No. 3.09 Involuntary Manslaughter

3. Battery ... (Part One)

*Id.* at 1331 n. 2. Judge Staton, who authored the main opinion, concluded that this was not "a proper tender of instructions...." *Id.* at 1331. He reasoned that "[m]erely giving the number of a pattern jury instruction is not authorized under Ind.Crim. Rule 8...." *Id.* Indiana Criminal Rule 8(D) provides in pertinent part:

Requested instructions must be reduced to writing (identified as to the party making submission), separately numbered, and accompanied by a cover sheet signed by the party, or his attorney, who requests such instructions and will be deemed sufficiently identified as having been tendered by the parties or submitted by the court if it appears in the record from an order book entry, bill of exceptions, or otherwise, by whom the same were tendered or submitted.

Waiver notwithstanding, Judge Staton addressed the merits, concluding that the trial court properly refused to instruct the jury on involuntary manslaughter because there was no serious evidentiary dispute concerning the defendant's intent. *Id.* at 1332–33.

Judge Garrard concurred in part and dissented in part. In dissent, he found that the defendant's "tender [of the involuntary manslaughter instruction] to the trial court was proper and adequate." *Id.* at 1333 (Garrard, J., concurring in part and dissenting in part). On this issue, Judge Garrard said he joined Judge Sullivan's dissent. *Id.*

Judge Sullivan dissented outright, concluding that the defendant's tender of the involuntary manslaughter instruction was proper and that the trial court erred in refusing to instruct the jury on involuntary manslaughter. Addressing the tender, he elaborated:

It is clear that trial counsel was seeking to incorporate by reference, rather than duplicating verbatim, Indiana Pattern Jury Instructions–Criminal No. 3.09 (1993 Supp.), and to reflect that the killing occurred while the defendant was committing or attempting to commit Battery as a Class C felony pursuant to I.C. 35–42–2–1(3). This procedure is specifically authorized by Rule 51(E) of the Indiana Rules of Trial Procedure, which reads as follows:

Any party requesting a trial court to give any instruction from the Indiana Pattern Jury Instructions, prepared under the sponsorship of the Indiana Judges Association, may make such request in writing without copying the instruction verbatim, by merely designating the number thereof in the publication.

*Id.* at 1334 (Sullivan, J., dissenting). As for Criminal Rule 8's requirement that requested instructions be in writing, Judge Sullivan explained that it was satisfied

here because the defendant's request "was in writing and, of course, all of the Indiana Pattern Jury Instructions are in written form. The request therefore conforms both to Crim.R. 8(D) and T.R. 51(E)." *Id.* at 1334 n. 6.

■ We agree with Judge Garrard and Judge Sullivan on this issue. If a defendant tenders an instruction in writing that designates the number of a pattern jury instruction without copying the instruction verbatim, then it is a sufficient tender. Here, however, Ketcham failed to do even this. The record shows that Ketcham orally requested a jury instruction on involuntary manslaughter, which the trial court denied. The trial court reasoned, "[y]ou did request[ ] it, but you submitted no instruction." Appellant's App. p. 234. Ketcham responded, "Well I was relying on the patterns." *Id.* An oral request for a pattern jury instruction is not enough. This is because in the heat of battle, things get lost. If the request for a pattern jury instruction is not in writing, then it becomes easier for it to be forgotten or not addressed. Trial Rule 51(E) recognizes this phenomenon by requiring parties to submit in writing the number of the pattern instruction. Because Ketcham failed to designate the number of the pattern jury instruction in writing, he has not preserved this issue for review.

■ Waiver notwithstanding, Ketcham's argument also fails on the merits. When a defendant requests a lesser-included offense instruction, the trial court must apply the three-part analysis set forth in *Wright v. State,* 658 N.E.2d 563 (Ind.1995). *Wilson v. State,* 765 N.E.2d 1265, 1271 (Ind.2002). The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. *Id.* If so, then the trial court proceeds to the final part, which requires the trial court to determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses. *Id. Wright* held that "if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." 658 N.E.2d at 567. In deference to the trial court's proximity to the evidence, we review a decision whether to instruct the jury on lesser-included offenses for an abuse of discretion if the court makes a finding as to the existence or lack of a serious evidentiary dispute. *McEwen v. State,* 695 N.E.2d 79, 84 (Ind. 1998). Here, in denying Ketcham's request for an instruction on involuntary manslaughter, the trial court specifically stated, "I don't think there is a factual basis for the giving of that instruction" because "[t]his was an intentional shooting." Appellant's App. p. 235. Because of this finding, we will review the trial court's refusal to give an involuntary manslaughter instruction for an abuse of discretion.

■ As for the first two parts of the *Wright* analysis, involuntary manslaughter is not an inherently included lesser offense of murder; however, it may be a factually included lesser offense if the charging information alleges that a battery accomplished the killing. *Wilson,* 765 N.E.2d at 1271. Battery is a knowing or intentional touching of another person in a rude, insolent, or angry manner. Ind.Code § 35–42–2–1. Here, the information alleged that Ketcham "knowingly kill[ed] Edward Wayne Sims by shooting the said Edward Wayne Sims with a deadly weapon, to wit: a Raven .25 caliber semi-automatic handgun, thereby inflicting mortal injury to the said Edward Wayne Sims, of which injury the said Edward Wayne Sims died...." Appellant's App. p. 9. Killing an individual

with a handgun is necessarily accomplished by touching someone in a rude, insolent, or angry manner. *See Lynch v. State*, 571 N.E.2d 537, 539 (Ind.1991), *reh'g denied*. As such, we find that the information did assert a battery, and involuntary manslaughter was a factually included lesser offense of murder. Thus, we turn to the final part of the *Wright* analysis.

Ketcham argues that there is a serious evidentiary dispute concerning whether he intended to kill or to batter Sims when he fired his gun, which is the critical element distinguishing involuntary manslaughter from murder. *See Wilson*, 765 N.E.2d at 1272. Specifically, Ketcham claims that his "intent was to scare Sims into leaving him and his friends alone. When displaying the gun didn't work, [Ketcham] felt he needed to shoot it. When that still didn't work, [Ketcham] felt Sims, who had been shot before, would not leave him alone unless [he] wounded him." Appellant's Br. p. 8 (citations omitted). "A verbal denial of the requisite criminal intent does not *ipso facto* create a 'serious evidentiary dispute' within the meaning of *Wright*." *Champlain v. State*, 681 N.E.2d 696, 701 n. 6 (Ind.1997). Apart from Ketcham's denial that he intended to kill Sims, we find that the trial court had sufficient justification for concluding that the other evidence in this case demonstrates the opposite. The evidence shows that Ketcham, who did not believe that the police would protect somebody like him, went out looking for Sims because he was tired of being "harassed," "chas[ed]," and "pick[ed] on." Tr. p. 226, 229. He brought a gun with him because he did not think that a knife would be enough. When Ketcham spotted Sims, he opened fire as Sims exited his car. Even as Sims retreated into his car, Ketcham fired more shots inside the car. In all, Ketcham fired five shots, one of which entered Sims' abdomen at a forty-five degree angle and penetrated his heart. Ketcham then fled the scene and hid in his aunt's cabin in West Terre Haute, where he was later apprehended by police. This evidence points to the conclusion that Ketcham did not intend to batter Sims when he fired his gun. *Cf. Lynch*, 571 N.E.2d at 539 (concluding that there was a serious evidentiary dispute concerning whether the defendant intended to batter or to kill his father where the defendant fired one shot at his father, which entered his arm, and called police immediately after the shooting). The trial court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter.[5]

## II. Autopsy Photograph

Ketcham contends that the trial court erred in admitting into evidence an autopsy photograph of Sims' heart removed from his body. Because the admission and exclusion of evidence falls within the sound discretion of the trial court, we review the admission of photographic evidence only for an abuse of discretion. *Swingley v. State*, 739 N.E.2d 132, 133 (Ind.2000). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Prewitt v. State*, 761 N.E.2d 862, 869 (Ind.Ct.App.2002). Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403;

---

**5.** Ketcham contends that if this Court reverses on instructional grounds, then he cannot be retried on murder—only voluntary manslaughter, involuntary manslaughter, and reckless homicide. In light of our conclusion that the trial court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter, we do not need to reach this argument.

*Swingley*, 739 N.E.2d at 132. Photographs, even those gruesome in nature, are admissible if they act as demonstrative aids for the jury and have strong probative value. *Swingley*, 739 N.E.2d at 133.

 Autopsy photographs often present a unique problem because the pathologist has manipulated the corpse in some way during the autopsy. *Corbett v. State*, 764 N.E.2d 622, 627 (Ind.2002). When a body is altered for a photograph, the concern is that the handiwork of the pathologist may be imputed to the defendant, thereby rendering the defendant responsible in the minds of the jurors for the cuts, incisions, and indignity of an autopsy. *Swingley*, 739 N.E.2d at 133. As such, "[a]utopsy photographs are generally inadmissible if they show the body in an altered condition." *Corbett*, 764 N.E.2d at 627. However, "'there are situations where some alteration of the body is necessary to demonstrate the testimony being given.'" *Id.* (quoting *Swingley*, 739 N.E.2d at 133–34). In *Fentress v. State*, 702 N.E.2d 721 (Ind.1998), our supreme court held that two photographs, which depicted the victim's skull with the hair and skin pulled away from it, were admissible notwithstanding the general rule that autopsy photographs are inadmissible if they show the body in an altered condition. Because the pathologist explained what he had done and that the alteration was necessary to determine the extent of the victim's injuries, the court found that the "potential for confusion [was] minimal" and that the probative value outweighed the prejudicial effect. *Id.* at 722.

The supreme court also found autopsy photographs depicting a body that had been altered to be admissible in *Cutter v. State*, 725 N.E.2d 401 (Ind.2000). The photograph at issue in that case depicted a pathologist's hand holding open the victim's vagina to display bruises that were relevant to the "by force" element of the rape charge. *Id.* at 406. The court stated that this photograph was admissible because the "distortion was necessary to show the jury [the victim's] largely internal injury." *Id.* Likewise, in *Corbett*, the supreme court held that the trial court did not err in admitting a photograph depicting a fracture in a portion of the victim's skull, which had been removed from the victim's head, because the pathologist explained how he removed this portion and highlighted the fracture to the jury. 764 N.E.2d at 627–28. As these cases demonstrate, there are situations where some alteration of the body is allowed where necessary to demonstrate the testimony being given. *See Swingley*, 739 N.E.2d at 134.

 Here, the State introduced, and the trial court admitted, State's Exhibit 15, which is an autopsy photograph of Sims' heart removed from his body showing the bullet hole with a ruler indicating scale. The pathologist, Dr. Roland Kohr, testified that during Sims' autopsy, he performed both external and internal examinations. As part of the internal examination, Dr. Kohr stated that it is standard procedure to remove organs and trace any wounds that may be there. Dr. Kohr explained to the jury that the bullet entered Sims' abdomen and without hitting any bone passed through his stomach, liver, diaphragm, heart, and aorta and came to rest in a branch of his pulmonary artery. During his testimony, Dr. Kohr demonstrated the angle the bullet traveled once it entered Sims' body and used State's Exhibit 15 to explain the path of the bullet through Sims' heart. Dr. Kohr concluded that the bullet hole to Sims' heart was "one of several fatal wounds[.]" Appellant's App. p. 226.

As for the probative value of State's Exhibit 15, we find that it is strong be-

cause Ketcham's *mens rea* was the major issue at trial. The fact that the bullet went through Sims' heart makes it more likely than not that Ketcham knowingly or intentionally rather than recklessly killed Sims when he fired his gun. State's Exhibit 15 was used to demonstrate the State's theory that this was an intentional killing. And when weighed against the prejudicial effect, we cannot conclude that the probative value is substantially outweighed by the danger of unfair prejudice. In looking at the prejudicial effect, we note that there is no blood in the photograph, the heart is separate and distinct from other body parts, and there was no confusion as to who was responsible for removing Sims' heart because Dr. Kohr explained that as part of an internal examination, it is standard procedure to remove organs and trace any wounds that may be there. We cannot conclude that the trial court abused its discretion in admitting State's Exhibit 15 into evidence.

### III. Balancing of Aggravators and Mitigators

Ketcham contends that the trial court erred in sentencing him to the maximum term of fifty years for voluntary manslaughter. Generally, sentencing determinations are within a trial court's discretion and are governed by Indiana Code § 35-38-1-7.1. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind.2002). This Court will review a trial court's sentencing decision only for an abuse of discretion, including the trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating factors and to run the sentences concurrently or consecutively. *Id.* If the trial court relies upon aggravating or mitigating factors to enhance or reduce a presumptive sentence, it must: (1) identify all significant mitigating and aggravating factors; (2) state the specific reason why each factor is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the factors. *Id.* Furthermore, the trial court is responsible for determining the appropriate weight of aggravating and mitigating factors. *Hurt v. State*, 657 N.E.2d 112, 115 (Ind.1995); *Powell v. State*, 751 N.E.2d 311, 315 (Ind. Ct.App.2001).

At the sentencing hearing, the trial court identified four aggravators: Ketcham was on probation at the time of this crime; extensive history of criminal or delinquent activity as an adult and juvenile; the risk is high that he will commit another crime; and lack of remorse. The trial court also identified one mitigator: Ketcham had a troubled family life as a young man. Concluding that the aggravators outweighed the mitigator, the trial court imposed the maximum sentence. On appeal, Ketcham "does not challenge the adequacy of the analysis or the findings; only the result. [Ketcham] believes improper weight was given the last aggravator, and not enough weight was given to the mitigator."[6] Appellant's Br. p. 18.

---

6. In one portion of his brief, Ketcham states that the trial court found one mitigator, "his troubled family life as a young man." Appellant's Br. p. 18. Later on in his brief, Ketcham states "although finding [Ketcham's] youth to be a mitigator, the trial court effectively gave it no weight, imposing the maximum sentence." Appellant's Br. p. 19. The record reflects that the trial court did not find Ketcham's youth to be a mitigator; rather, it found his "bad childhood" to be a mitigator.

Sentencing Tr. p. 60. Even if we were to construe Ketcham's argument as the trial court erred by failing to give his age any mitigating weight, he still cannot prevail. In *Monegan v. State*, 756 N.E.2d 499 (Ind.2001), our supreme court stated:

Age is neither a statutory nor a per se mitigating factor. There are cunning children and there are naïve adults. In other words, focusing on chronological age, while often a shorthand for measuring culpability,

As for the weight the trial court gave to the aggravator of Ketcham's lack of remorse, the trial court noted that generally lack of remorse is not to be given great weight when the defendant maintains his innocence. However, the trial court distinguished that situation from the one here, referring to the exchange between Detective Miner and Ketcham:

[Detective Miner:] Are you glad that [Sims is] dead?

[Ketcham:] I mean I ain't glad he's dead and I'm locked up cause of this shit, I just wish it didn't end this way. I mean f* * *, I wish he had just stopped awhile back and quit trying to beat me up.

[Detective Miner:] Earlier you told me you didn't have any remorse about him being dead.

[Ketcham]: No, there ain't. I mean there ain't no remorse. That I will say, there ain't none of that, I mean I didn't want him to die, but I don't feel bad for what I did, I don't.

Tr. p. 244–45. The trial court described this lack of remorse as "unlike anything— well, unlike I've seen in very many cases. It is a lack of remorse bordering on arrogance or cockiness for a person his age." Sentencing Tr. p. 62. Although the trial court noted that Ketcham showed more remorse at the sentencing hearing than at any time prior, the trial court explained that it was his sentencing date after all. Concerning the weight the trial court gave

to the mitigator of Ketcham's troubled childhood, the trial court stated:

the weight that I would attribute to that is not a great one, because he seems to have then gone [out] on his own course of conduct without a sense of morality. I take it from what he said on the stand here today, that when he was [on] his own, committing these thefts that he felt that maybe they were wrong decisions, but that in some way I got the impression he felt they were morally justified because how else are you going to eat or get clothes. Well, there is such a thing as a job.

Sentencing Tr. p. 60–61.

■■■■ After reviewing the transcript of the sentencing hearing, we find that Ketcham has failed to prove that the trial court abused its discretion in assessing his lack of remorse too much aggravating weight and in not assessing his troubled childhood enough mitigating weight. And even if the trial court erred in this regard, Ketcham has failed to prove that the trial court's conclusion would have been any different. It is well settled that only one valid aggravating circumstance is required to be found by the trial court in order to enhance a presumptive sentence. *Sherwood v. State*, 702 N.E.2d 694, 699 (Ind. 1998), *reh'g denied*. In addition to Ketcham's lack of remorse, the trial court found three other aggravators, none of which Ketcham challenges. As such, the trial court did not abuse its discretion in sen-

---

is frequently not the end of the inquiry for people in their teens and early twenties. There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful. *Id.* at 504 (citation and quotation omitted). Considering the defendant's history of criminal conduct, the seriousness of the crime (murder), and the sentence imposed (sixty years), the court concluded that the defen-

dant, who was seventeen years old at the time of the crime, "was beyond the age where the law commands special treatment." *Id.* Here, Ketcham was twenty years old at the time of the crime. At that point, he had already amassed a rather lengthy adult and juvenile record. Considering Ketcham's criminal history as well as the crime he committed, the trial court did not err in failing to give his age any mitigating weight.

tencing Ketcham to the maximum term of fifty years for voluntary manslaughter.

### IV. Manifestly Unreasonable

Ketcham contends that his fifty-year sentence for voluntary manslaughter is manifestly unreasonable. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. However, we will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).[7] Our review under Appellate Rule 7(B) is very deferential to the trial court. *Cruz Angeles v. State*, 751 N.E.2d 790, 800 (Ind.Ct.App.2001), *trans. denied.*

Regarding the nature of the offense, the presumptive sentence for the class of crimes to which the offense belongs is meant to be the starting point for the court's consideration of what sentence is appropriate for the crime committed. *Hildebrandt v. State*, 770 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* Here, Ketcham was convicted of a Class A felony. The presumptive sentence for a Class A felony is thirty years, with the maximum sentence being fifty years and the minimum sentence being twenty years. Ind. Code § 35–50–2–4. As such, Ketcham received the maximum lawful sentence for his crime. Although maximum lawful sentences "have historically invited appellate review and, upon occasion, revision," *Hildebrandt*, 770 N.E.2d at 360, considering the nature of the offense and the character of the offender, this is not a case that requires revision.

As for the character of the offender, the court is guided by the general sentencing considerations under Indiana Code § 35–38–1–7.1(a), the aggravating and mitigating circumstances under Indiana Code § 35–38–1–7.1(b) and (c), and the other factors left to the trial court's discretion under Indiana Code § 35–38–1–7.1(d). *Id.* at 361. Under subsection (a), the trial court considers, among other things, the nature and circumstances of the crime, the defendant's criminal history and character, and the risk that the defendant will commit another crime. Here, the nature and circumstances of the crime are that Ketcham, armed with a handgun because he did not think a knife would do, took the law into his own hands and opened fire on Sims because he was tired of being bullied by him. Although Ketcham was just twenty years old at the time, his adult criminal history consisted of two counts of battery by bodily waste, burglary, theft, and criminal mischief. Ketcham's juvenile record is also very lengthy, comprising four pages of the presentence investigation report. Regarding Ketcham's character, the record shows that he had no remorse for his actions. Finally, Ketcham's risk for committing another crime is high in that he committed the instant crime while on probation. Under these facts and circumstances, we cannot conclude that Ketcham's fifty-year sentence for voluntary manslaughter is manifestly unreasonable.

### Conclusion

We find that the trial court did not err in refusing to instruct the jury on involuntary manslaughter and in admitting the autopsy photograph of the victim's heart

7. Effective January 1, 2003, Appellate Rule 7(B) will provide: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

into evidence. Additionally, we find that the trial court did not err in sentencing Ketcham to the maximum term of fifty years for voluntary manslaughter and that his sentence is not manifestly unreasonable.

Affirmed.

NAJAM, J., and BAILEY, J., concur.