**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 29 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL ROBERT MOLA, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1105-CR-206 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-0907-MR-5

**February 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Daniel Robert Mola ("Mola") was convicted, after a jury trial, of voluntary manslaughter,[1] a Class A felony. He appeals from this conviction and raises the following restated issue for review: whether the trial court abused its discretion when it denied Mola's proposed jury instruction on the lesser-included offense of involuntary manslaughter.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 18, 2009, Christopher Elkins ("Elkins") and Mola were at a bar called Buddy and Pal's Place in Winfield, Indiana. Elkins was sitting at the bar area. When Elkins left his seat, Mola took his place. Later, Elkins returned and entered into a "heated" conversation with Mola. *Tr.* at 390. Both men appeared angry and yelled expletives at each other. Bar employees then separated the two, and Elkins left the bar area.

Elkins accepted an offer from his friend, James Bannister ("Bannister"), to drive him home. As Bannister and Elkins were preparing to leave the bar, they walked past Mola who was still sitting in the bar area. Elkins shoved Mola's barstool before walking out to the parking lot. After Elkins passed, Mola stood up, loaded a round into his handgun and approached the exit while holding the pistol. A bar employee tried to stop Mola, but Mola continued out to the parking lot.

When Mola reached the parking lot, Elkins and Bannister were near the back of Bannister's vehicle. Mola raised his firearm and yelled to Elkins, "[H]ey[,] [m*f*]." *Id.* at 833, 836. Elkins turned around and asked Mola, "[W]hat are you going to do[?] [S]hoot

---

[1] *See* Ind. Code §35-42-1-4.

me[?]" *Id.* at 580, 834. Mola then fired two shots in "rapid" succession at Elkins, striking him in the abdomen. *Id.* at 496. Elkins died as a result of his gunshot wounds.

On July 20, 2009, the State of Indiana charged Mola with murder and carrying a handgun without a license. At trial, the court refused Mola's proposed instruction on including involuntary manslaughter as a lesser included offense of murder. Mola was acquitted of murder and found guilty of voluntary manslaughter, a Class A felony, and carrying a handgun without a license, a Class A misdemeanor. Mola appeals his conviction of voluntary manslaughter.

## DISCUSSION AND DECISION

The manner of instructing a jury lies largely within the sound discretion of the trial court, and we review only for an abuse of that discretion. *Emerson v. State*, 724 N.E.2d 605, 608 (Ind. 2000); *Stringer v. State,* 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). An abuse of the trial court's discretion occurs "when 'the instructions as a whole mislead the jury as to the law in the case.'" *Ham v. State,* 826 N.E.2d 640, 641 (Ind. 2005) (quoting *Carter v. State,* 766 N.E.2d 377, 382 (Ind. 2002)). A defendant is only entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Hero v. State*, 765 N.E.2d 599, 602 (Ind. Ct. App. 2002), *trans. denied*. In determining whether a trial court properly refused an instruction, we consider the following: "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions" that are given. *Emerson,* 724 N.E.2d at 608.

3

A trial court must engage in a three-step analysis when determining whether to instruct a jury on a lesser included offense of the crime charged. *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995). First, the trial court must consider whether the alleged lesser included offense is an *inherently* included offense to the principal charge. *Id*. If it is not, the trial court must then decide whether the alleged lesser included offense is a *factually* included offense to the principal charge. *Id*. at 567. Finally, if the alleged lesser included offense is either an inherently or factually included offense to the principal charge, then the trial court must determine if there is a serious evidentiary dispute regarding the element that distinguishes the lesser offense from the principal charge. *Id.* If such a dispute is present and a jury could conclude that the lesser offense was committed but not the principal charge, then it is a reversible error for the trial court to refuse to give the jury instructions on the lesser included offense. *Id.*

Mola argues that the trial court abused its discretion when it denied his proposed jury instruction including involuntary manslaughter as a lesser included offense to the murder charge. He contends that his request should have been granted because involuntary manslaughter is a factually included lesser offense in this case and there was a serious evidentiary dispute as to whether Mola intended to kill or merely batter Elkins.

Involuntary manslaughter is not an inherently included lesser offense to murder, but it may be a factually included lesser offense if the charging instrument alleges that the killing was accomplished by a battery. *Evans v. State*, 727 N.E.2d 1072, 1081 (Ind. 2000). A factually included lesser offense exists when the charging instrument alleges that the means

4

used to commit the charged crime include all of the elements of the alleged lesser included offense. *Wright*, 658 N.E.2d at 567. The charging information in this case alleged that Mola killed Elkins "by means of a handgun." *Appellant's App.* at 35. When the charging information alleges the use of a handgun, it alleges a touching that satisfies the elements of a battery such that involuntary manslaughter becomes a factually included lesser offense of murder. *See Evans*, 727 N.E.2d at 1081. Battery is defined as "knowingly or intentionally touching a person in a rude, insolent, or angry manner." Ind. Code § 35-42-2-1. "To kill with a gunshot is to kill by a touching." *Miller v. State*, 694 N.E.2d 770, 774 (Ind. Ct. App. 1998), *trans. denied*. Accordingly, involuntary manslaughter was a factually included lesser offense to the murder charge in this case.

As a result, the issue of whether the trial court erred by failing to instruct the jury of the lesser included offense of involuntary manslaughter depends on whether a serious evidentiary dispute existed regarding the element of intent that distinguishes murder from involuntary manslaughter. Murder is defined as "knowingly or intentionally" killing another human being. Ind. Code § 35-42-1-1(1). Involuntary manslaughter is the killing of a human being while "committing or attempting to commit . . . battery." Ind. Code § 35-42-1-4(c)(3). The trial court's refusal to instruct the jury on the lesser included offense would have been an abuse of discretion only if there was a serious evidentiary dispute as to whether Mola's intent was to kill or merely batter Elkins. *Ketcham v. State*, 780 N.E.2d 1171, 1178 (Ind. Ct. App. 2003), *trans. denied*.

Knowing or intentional killing may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury. *McDowell v. State*, 885 N.E.2d 1260, 1263 (Ind. 2008). Here, the evidence showed that, after Elkins pushed Mola's barstool on his way to the parking lot, Mola deliberately loaded a round in his handgun in order to prepare it for shooting and ran after Elkins while brandishing the weapon. On his way outside, Mola resisted a bar employee's efforts to discourage him from pursuing Elkins. Once Mola saw Elkins standing by Bannister's vehicle in the parking lot, Mola pointed the handgun at Elkins and confronted Elkins by yelling, "[H]ey[,] [m*f*]." *Tr.* at 833, 836. After Elkins asked Mola whether he was going to shoot him, Mola fired his gun twice at Elkins who was unarmed. The two shots were fired in "rapid" succession, *Id.* at 496, and five witnesses testified that Elkins never advanced toward Mola before he fired the second shot. *Id.* at 496-97, 581-82, 837, 937-38, 991.

Both bullets struck Elkins in his abdomen, an area of the body that Mola testified he knew contained many vital organs, *Tr.* at 1382, and Elkins died from the gunshot wounds. After the police arrived, Mola asked for the return of his own gun so that he could shoot himself because he did not want to go to jail. Mola told officers that he knew the shooting was not justified. *Tr.* at 1039, 1060. While Mola testified that he never intended to kill Elkins, *Tr.* at 1314, "[a] verbal denial of the requisite criminal intent does not *ipso facto* create a 'serious evidentiary dispute.'" *Ketcham*, 780 N.E.2d at 1178 (quoting *Champlain v. State*, 681 N.E.2d 696, 701 n.6 (Ind. 1997)).

No serious evidentiary dispute was present regarding Mola's intent to kill Elkins. The trial court had sufficient evidence to conclude that Mola acted with the intent to kill and not merely batter Elkins. Consequently, it was not an abuse of the trial court's discretion to deny Mola's proposed jury instruction that included involuntary manslaughter as a lesser included offense.

Affirmed.

BARNES, J., and BRADFORD, J., concur.