**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 10 2012, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Cohen Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STACEY HUDDLESTON, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1204-CR-152 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable George W. Biddlecome, Acting Judge
Cause No. 20C01-0501-MR-3

**December 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Stacey Huddleston, Jr. appeals his sentence and conviction for murder, a felony, following a jury trial. Huddleston presents two issues for review:

1.      Whether the evidence is sufficient to support his conviction.

2.      Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Huddleston and Ronald White are cousins and friends, and in December 2004, both lived in Elkhart. Seventeen-year-old Huddleston and White were also friends with White's fifteen-year-old neighbor, S.G. On December 29, 2004, White returned home from shopping to find that someone had broken into his apartment and stolen Huddleston's PlayStation 2. White told Huddleston of the burglary and that he suspected S.G. Huddleston was angry.

That evening, Huddleston went to S.G.'s home and invited him over to White's apartment. Other friends, Tony Martinez and Danielle Travis, were already at the apartment. Once back at the apartment with S.G., Huddleston visited for a while and then left for a private conversation with White. When White and Huddleston returned, they offered S.G. a cigarette and then left the apartment with S.G.

White and Huddleston took S.G. to the Burger Dairy, where video surveillance recorded them. After they left the Burger Dairy, White and Huddleston talked to S.G. about the stolen PlayStation. S.G. attempted to run away, running into a passing car and attempting to enter it, but White and Huddleston caught up with him and then held him

2

down.  At some point Huddleston returned to White's apartment and, in front of Martinez and Travis, retrieved a knife and left the apartment with it.  Later, White returned with blood spatter on his clothes.  He left his apartment a short time later with Martinez and Travis.  While driving down the road, they passed Huddleston walking and wearing a black coat.

S.G.'s body was found the following day by neighbors near a dumpster.  He had been stabbed numerous times, receiving too many wounds for the coroner to obtain an accurate count.  Twelve of the wounds had pierced the full thickness of his skin, and he had suffered injuries to his lips, neck, chin, eyebrows, face, nose, ear, scalp, skull, back, lower back, larynx, chest, forearms, knee, lung, and kidney.  None of the stab wounds struck a major vessel, leading the coroner to conclude that he was alive when he received many if not all of the stab wounds.  The coroner concluded that there were two plausible causes of death:  multiple sharp force injuries and loss of blood.  Police recovered a knife that was consistent with S.G.'s injuries and bore traces of his DNA.

The State charged Huddleston with murder, a felony.  Huddleston pleaded guilty and was sentenced to fifty years.  Subsequently he filed a petition for post-conviction relief, asserting that his guilty plea was inconsistent with his testimony that he had not killed S.G., that he had not anticipated White would kill S.G., and therefore he had not possessed the mens rea to be convicted of murder.  The post-conviction court denied his petition, but on appeal this court reversed.  Huddleston v. State, 951 N.E.2d 277, 281 (Ind. Ct. App. 2006).

Huddleston was tried on January 24 and February 16, 2012. The jury found him guilty of murder, a felony. At sentencing on March 8, the trial court found the following aggravators: the brutal nature of the crime; that the crime was planned and took place over an extensive period of time; Huddleston's constantly changing story about events on the night of the offense; his three juvenile delinquency adjudications, all for battery; and his frequent use of marijuana. The court also found the following mitigators: Huddleston's young age; his accomplishments in education and institutional employment during his incarceration and while awaiting trial; his family support; and his lack of an adult criminal history, although the court "decline[d] to give substantial weight to the latter." Appellant's App. at 82. The court then sentenced Huddleston to fifty-five years, with credit for time served and good time credit. Huddleston now appeals.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of Evidence

Huddleston contends that the evidence is insufficient to support his conviction for murder. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

4

To prove murder, a felony, the State was required to show beyond a reasonable doubt that Huddleston knowingly or intentionally killed S.G. See Ind. Code § 35-42-1-1. The uncontested evidence shows that Huddleston was angry with S.G. for having stolen his PlayStation 2, that he picked S.G. up from his home and the two went to White's apartment, that Huddleston and White had a private conversation before leaving the apartment with S.G., that Huddleston returned and retrieved a knife, that a passing driver observed Huddleston and White chasing S.G. and holding him down when they caught him, that S.G. was stabbed to death, and that Huddleston's clothes had S.G.'s DNA on them. That evidence is sufficient to support the murder conviction.

Still, Huddleston maintains that he did not kill S.G. He argues that the evidence is insufficient because there was no testimony that he knew S.G. would be killed or that he knew White would stab S.G. Huddleston's argument, relying on his own self-serving statements, amount to a request that we reweigh the evidence, which we cannot do. See Jones, 783 N.E.2d at 1139. Huddleston has not shown that the evidence is insufficient to support his conviction.

**Issue Two: Appellate Rule 7(B)**

Huddleston next contends that his sentence is inappropriate in light of the nature of the offense and his character. Huddleston committed the underlying offense in 2004, when the presumptive sentencing scheme was in effect. In such cases, sentencing determinations are within a trial court's discretion and are governed by former Indiana Code § 35-38-1-7.1. Ketcham v. State, 780 N.E.2d 1171, 1180 (Ind. Ct. App. 2003) (citing Henderson v. State, 769 N.E.2d 172, 179 (Ind. 2002)), trans. denied. This court

will review a trial court's sentencing decision only for an abuse of discretion, including the trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating factors and to run the sentences concurrently or consecutively. Id. (citation omitted). When a trial court imposes the presumptive sentence, it has no obligation to explain its reasons for doing so. Ray v. State, 838 N.E.2d 480, 492 (Ind. Ct. App. 2005) (citation omitted), trans. denied. However, where, as here, the trial court listed aggravating and mitigating circumstances in its sentencing order, it was required to state its reasons for imposing the sentence it did. Id. (citing Jackson v. State, 728 N.E.2d 147, 155 (Ind. 2000)). "This requirement is intended to ensure that the trial court considered proper matters in determining the sentence and facilitates meaningful appellate review of the reasonableness of the sentence." Id. (internal quotation marks and citation omitted). Furthermore, the trial court is responsible for determining the appropriate weight of aggravating and mitigating factors. Ketcham, 780 N.E.2d at 1180 (citations omitted).

Here, the trial court sentenced Huddleston to the presumptive term of fifty-five years for murder. See former Ind. Code § 35-50-2-3. In its sentencing order, the trial court found as follows:

> In arriving at the sentence imposed herein, the court takes into consideration the defendant's young age; his accomplishments while incarcerated and awaiting trial, both in education and institutional employment; and, the family support that the defendant tells us that he has. Those considerations are mitigating circumstances the court finds to exist in this cause. The court also takes into account the Defendant's lack of an adult criminal history as a mitigator, but declines to give substantial weight to that mitigator in light of the defendant's extensive history of juvenile delinquency.

There are a number of aggravating circumstances that exist as well. The undersigned notes that he presided at trial and the aggravators herein cited are the result of admissions by the defendant or are based upon the evidence which was uncontested by the defendant. First and foremost was the brutal nature of the crime. The victim was a 15-year-old boy who was small for his age. This boy was in the company of the defendant because the boy's mother trusted the defendant. She testified at trial that she did not worry about her son because she knew he was with Stacey [Huddleston]. This boy was savagely beaten and stabbed repeatedly. The defendant did not obtain medical assistance for the boy and left him to die. Beyond the brutality of the slaying, the court notes that it took place over an extended period of time. The actions of the defendant, Mr. Huddleston, and Mr. White, his cohort in this crime, were planned. This was not an impulsive action that took place in a matter of seconds. The defendant and his cohort planned to lure the victim from a place of safety to the place where he was killed and, at a minimum, to batter him severely. The defendant made little or no effort to protect the victim. Moreover, the knife that was the murder weapon was obtained by the defendant some period of time prior to the actual stabbing. The defendant had ample opportunity to realize the horrible nature of the events which he had put into motion[] and could have abandoned that course of conduct. He did not do so. He persisted in the implementation of his scheme which led to the death of [S.G.]. The court has also taken into account the fact that the defendant lied to the victim's mother about the death of her son. He denied her the closure she could have experienced had he told her that her boy had been murdered. He lied to the police. He then gave a different account of the events in question on the witness stand. This record of dishonesty in connection with this case is an aggravator which the court takes into account.

While it is true that the defendant has no adult criminal history, but [sic] the defendant was adjudicated a delinquent child for at least three separate batteries. In 2002, there was a battery adjudication, and that battery resulted in bodily injury. In 2002, later in the year, the defendant was adjudicated a delinquent child for battery upon a school corporation employee; and, in early 2003, the defendant was again adjudicated a delinquent child as a result of his commission of a battery. This defendant has a history of violence, and that history was explained by the defendant himself during his testimony at trial. He testified that he dealt with problems with his fists. Given that world view, and that on at least three separate occasions he would have been convicted of battery if he were an adult, the court considers the defendant's proclivity for violence to be an aggravator.

The court also considers the defendant's admission that he frequently used marijuana at this point in his life. Each time he used marijuana, he committed a crime. Based upon his testimony, his usage was continuous and frequent.

Weighing those aggravators and mitigators, the court finds that the 55-year sentence is an appropriate one. The court finds the enhanced sentence is an appropriate one. The court distinguishes the sentence imposed this date from that handed down by Judge Shewmaker[.] Judge Shewmaker found a mitigator in that the defendant had accepted responsibility for his criminal acts. That mitigator is not present in this case. Balancing the aggravators and mitigators, the court finds the 55-year sentence imposed this date is an appropriate one in this case.

Appellant's App. at 82-83.

Huddleston contends that the trial court should have sentenced him to less than the presumptive sentence and, therefore, that his sentence should be revised under Appellate Rule 7(B). But he concedes that the offense is "notably egregious." Appellant's Brief at 10. Yet he then repeats his defense theory at trial that he had only wanted to scare and fight S.G., denying that he knowingly or intentionally killed S.G. That argument is at odds with his conviction. Huddleston has not shown that his sentence is inappropriate in light of the nature of the offense.

Nor has Huddleston shown that his sentence is inappropriate in light of his character. In support of his argument, Huddleston points out that he had received an associate degree in theology during his incarceration and that he was employed while incarcerated, made $500 per month, paid $250 per month to offset part of the cost of his incarceration, and donated the rest to charities in Elkhart. But the trial court acknowledged those circumstances as mitigating factors at sentencing. Huddleston has not persuaded us that the sentence is inappropriate in light of them.

8

Finally, Huddleston also states: "Based on the information provided to the trial court in the Defendant's pre-sentence report, along with the statements made at sentencing, it is clear that there were several positive points in the Defendant's favor to justify a sentence lower than the sentence of fifty[-]five years." Appellant's Brief at 12. But Huddleston does not identify the "positive points" or provide analysis of them supported by cogent reasoning. As such, his argument based on those points is waived. See Ind. Appellate Rule 46(A)(8)(a).

In essence, Huddleston contends that the trial court improperly weighed the aggravators and mitigators. He has not demonstrated that the trial court abused its discretion when it assigned weight to the aggravators and mitigators. See Ketcham, 780 N.E.2d at 1180 (citations omitted). And Huddleston has not shown that his sentence is inappropriate in light of the nature of the offense and his character. Therefore, we affirm his sentence.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.